UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

IN RE                          )
                               )
AZTEC SUPPLY CORP.         )    Bankruptcy No. 07 B 15189
                               )
           Debtor.         )
                               )

## MEMORANDUM OPINION ON AZTECAMERICA BANK'S MOTION TO VACATE THE ORDERS OF SEPTEMBER 11, 2008

On August 21, 2007, Aztec Supply Corporation ("Debtor") filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code. AztecAmerica Bank (the " Bank") was the only secured creditor of Debtor and asserted a first priority security interest on all of Debtor's assets. During pendency of the bankruptcy, an order granting relief in the nature of a declaratory judgment was entered in favor of the Bank authorizing it to stop payment of a certain cashier's check issued by the Bank with Debtor as the remitter. That order was entered without notice to the holder of the check, and without filing an Adversary proceeding and serving summons on that holder. Debtor's bankruptcy case was subsequently dismissed on motion of the United States Trustee.

The cashier's check in question was payable to National Packing Services, Corp. ("NPS"). After the bankruptcy was dismissed, NPS assigned the check to Inlander Brothers, Inc. ("Inlander") which moved to reopen the bankruptcy case and vacate that portion of the prior order blocking its rights as holder of the cashier's check. Those motions were granted on September 11, 2008. Pending is the Bank's Motion under Rule 59 Fed. R. Civ. P. [Rule 9023



Fed. R. Bank. P.] to vacate the Orders of September 11, 2008, which reopened the bankruptcy case and vacated the applicable portion of the order at issue.

For the following reasons, the Bank's Motion will be granted in part, and the September 11th Orders will be vacated, but only so that more precisely focused orders can be entered. This Memorandum Opinion clarifies the legal authority upon which the relief in Inlander's motions should be granted. A new order will be entered vacating the dismissal of Debtor's bankruptcy case so that Inlander's Motions may be dealt with and the case will be reopened so that the Clerk can administer the docketing requirements. A new order will then be entered vacating that portion of the earlier order affecting the cashier's check. This relief is granted since the order in question was void because it was obtained without initiating an Adversary proceeding and serving summons or otherwise providing notice to the affected party as required by Bankruptcy Rules and Fifth Amendment due process.

## PERTINENT CASE HISTORY

The relevant history of pending matters is derived from the filings and docket entries in this case, and undisputed matters pleaded. It is a sad history of failure to comply with rules dealing with electronic filings, sloppiness in filing the bankruptcy petition and inadequate scheduling of claims, lack of notice to parties to be affected by orders requested, and disregard of due process. Thankfully, it is not a history often seen in this court.

On or about September 6, 2007, after Debtor's bankruptcy case had been filed, Debtor received a check drawn on an Inlander corporate checking account payable to Debtor in the amount of $15,803.48 (the "Inlander Check"). Debtor used that Inlander Check to purchase a cashier's check from the Bank in the amount of $15,496.25 (the "Cashier's Check"). The Cashier's Check was drawn to the order of "NPS" as payee, NPS being then a supplier of Debtor

and Inlander.  The balance of the Inlander check or $307.23, represented a two-percent commission to Debtor, and was deposited into Debtor's account at the Bank.  The Bank contends that the Inlander Check was cash collateral securing its loan to Debtor, and that use of it as described violated its rights without permission or court authority.

When this bankruptcy case was filed, the Bank was initially kept in the dark despite rules that provided for notice to creditors.  Pursuant to Rule 1007(a)(1) Fed. R. Bankr. P., "In a voluntary case, the debtor shall file *with the petition* a list containing the name and address of each entity included *or to be included* on Schedules D, E, F, G, and H as prescribed by the Official Forms."  (Emphasis added).  See also Local Bankruptcy Rule 1007-1 (requiring "Computer Readable Lists of Creditors").  In this case, the Bank was not listed on Debtor's "Creditor Matrix", which is the list of creditors referred to in Rule 1007(a)(1) and Local Rule 1007-1 that is used by the Clerk of Court to send notices.  (Docket No. 1.)  Therefore, the Bank was not sent notice of the Meeting of Creditors held under 11 U.S.C. § 341 when the Clerk mailed that notice to creditors on August 25, 2007.  (Docket No. 5.)  Debtor later filed its Schedule D listing the Bank as a secured creditor on September 6, 2007, sixteen days after Debtor's bankruptcy petition was filed.  See Rule 1007(c) Fed. R. Bankr. P. (requiring that schedules be filed within fifteen days of the petition).  However, due to its failure to follow the correct procedures for electronic filing, Debtor's counsel  was notified by the Clerk to re-file its Schedule D, which they did on September 14, 2007.  (Docket No. 15.)  Consequently, the Bank did not receive notice of bankruptcy proceedings in this case on a regular basis until its counsel filed an appearance on October 2, 2007.  (Docket Nos. 23-24.)  It appears, therefore, that the

Bank did not have notice of Debtor's bankruptcy filing when it issued the Cashier's Check on September 6th.

National Packing Services presented the Cashier's Check for deposit on September 11, 2007. It appears that the Bank had actual notice of Debtor's bankruptcy as of September 17, 2007, when it dishonored and stopped payment on the Check that day. The Bank took the position that use of the $15,803.48 from Inlander to purchase the Cashier's Check was an unauthorized use of its cash collateral in contravention of 11 U.S.C. § 363(c)(2).

On October 2, 2007, the Bank filed a Motion for Order Granting Relief From Automatic Stay to Set Off Accounts and to Stop Payment of Cashier's Check or in the Alternative to Dismiss Case (the "Motion for Relief from Automatic Stay") in which it requested permission from the court to stop payment of the Cashier's Check. (Docket No. 25.) However, due to failure of its counsel to follow the correct procedures for electronic filing, the Bank was notified to re-file that Motion, which was done on October 4, 2007. (Docket No. 31.) No Service List was attached to the Certificate of Service when the Motion was re-filed on October 4th. In addition, NPS, which was payee on the Cashier's Check and the party whose rights the Bank sought to affect by its request for authorization to stop payment on the Check, was not listed on the Certificate of Service and Service List attached to the Motion when it was originally filed on October 2nd. The Bank concedes that it never provided NPS with notice of the relief sought against it in that Motion or any subsequent motion filed in the bankruptcy concerning the Cashier's Check. (See Hr'g Tr. 15-16, Sept. 9, 2008.) Judge Squires, before whom this case was assigned, continued the hearing on that Motion until October 16, 2007.

Also noticed for October 16th was the Bank's Motion for Authorization for Use of Cash Collateral and Granting Post-Petition Replacement Liens. On October 16th, Debtor and the Bank jointly presented a Stipulation and First Interim Order Authorizing Use of Cash Collateral and Granting Post-Petition Replacement Liens which authorized use of cash collateral through November 1, 2007. (Docket No. 52.) As earlier noted, the Bank had previously dishonored the Cashier's Check when NPS presented it for payment on September 17, 2007. As part of the Stipulation and First Interim Order, Debtor agreed to "use its best efforts to cause the holder of cashier's check number 1199 in the amount of $15,496.25 issued by Lender to be returned to Lender without being presented for payment." No objections were interposed to the proposed Order, and Judge Squires entered the Stipulation and First Interim Order at the October 16th hearing. (Docket No. 52.) Hearing on the Motion for Relief from Automatic Stay was continued until October 30, 2007.

On October 30th, the Bank presented a new Motion for Authorization for Continued Use of Cash Collateral, and a Stipulation and proposed draft Order Authorizing Continued Use of Cash Collateral. The Order requested therein was entered by Judge Squires on November 6, 2007 (the "November 6th Order"). (Docket No. 79.) Paragraph 7 of the Order proposed with the purported "Stipulation" authorized the Bank "to issue a stop payment order on cashier's check number 1199 in the amount of $15,496.25 previously issued by Lender at the request of Debtor." Paragraph 7 thereby sought to ratify the Bank's unilateral decision to dishonor the Cashier's Check on September 17th. Although the interest of NPS as payee of the Check was clearly known and directly affected by that Order, NPS was not provided any notice of the October 30th hearing or of the request for entry of the Order entered on November 6th. In addition, the Motion

-5-

requested the relief provided for in Paragraph 7 which comprised a form of declaratory judgment adjudging the validity of a party's interest in the check. That is certainly not the type of relief normally contained in a motion for use of cash collateral under 11 U.S.C. § 363(c)(2). In other words, Paragraph 7 was buried in the middle of an Order purportedly agreed to by all parties affected by it when, in fact, the judge was not informed that the party directly affected by Paragraph 7 of the Order had not agreed to the Order and had received no notice of the Motion.

On October 11, 2007, the United States Trustee filed a Motion to Convert or, in the Alternative, Dismiss Chapter 11 Case for failure of Debtor to comply with certain of its statutory obligations. (Docket No. 39.) On January 8, 2008, an Order was entered granting the United States Trustee's Motion to Dismiss, and denying the Bank's pending Motion for Relief from Automatic Stay as moot. (Docket No. 109.) On January 14, 2008, Debtor's bankruptcy case was closed. (Docket No. 112.)

On January 16, 2008, NPS assigned its rights and interest in the Cashier's Check to Inlander. On February 5, 2008, Inlander commenced suit against the Bank in the Circuit Court of Cook County, Illinois for breach of contract for the wrongful dishonor of the Cashier's Check. On February 28, 2008, the Bank moved to dismiss Inlander's state court suit, asserting Paragraph 7 of the bankruptcy court's November 6th Order against its assignor NPS as a bar to recovery. On June 24, 2008, the Bank's Motion to Dismiss was granted and Inlander's state court suit was dismissed by the state court judge.

Inlander then appeared here seeking orders reopening Debtor's bankruptcy case and vacating Paragraph 7 of the November 6th Order which had authorized the Bank to stop payment on the Cashier's Check. (Docket Nos. 118, 120.) The Bank raised two arguments in opposition

-6-

to Inlander's Amended Motion to Reopen the Bankruptcy and its Amended Motion to Vacate (collectively the "Motions to Reopen and Vacate"). First, the Bank argued that Debtor's bankruptcy case could not be reopened pursuant to 11 U.S.C. § 350(b), because the case had been dismissed rather than closed. (Response ¶¶ 6-7 at 2-3) (Docket No. 128.) Second, the Bank argued that Inlander did not have standing as a "party in interest" under Rule 5010 Fed. R. Bankr. P. to seek to reopen Debtor's case. (Id. ¶¶ 9-11 at 4.)

On September 9, 2008, the undersigned was sitting in the absence of Judge Squires. Following argument, two orders were entered on September 11, 2008 (the "September 11th Orders"). The first Order Reopening Case and Reclosing It was entered for the limited purpose of permitting the relief requested in the second Order. (Docket No. 134.) The second Order vacated "[t]hat portion of the order entered on November 6, 2007, (¶ 7 thereof) involving AztecAmerica Bank cashier check no. 1199 in the amount of $15,496.25. . . ." (Docket No. 135.)

On September 19, 2008, the Bank filed the pending Motion to Vacate the September 11th Orders which is treated under Rule 59 Fed. R. Civ. P. [Rule 9023 Fed. R. Bankr. P.]. (Docket No. 137.) Since the Orders in issue were entered by the undersigned, with consent of Judge Squires the Motion to Vacate was returned here for disposition. It has been fully briefed by the parties, and no issues of material fact have been demonstrated.

For reasons stated below, the Bank's Motion will be allowed only to the extent that the original September 11th Orders of the undersigned are vacated. However, new orders will now be entered on Inlander's Motions to Reopen and Vacate vacating the case dismissal order pursuant to Rule 60(b)(6) Fed. R. Civ. P. [Rule 9024 Fed. R. Bankr. P.] so that the motion for

relief may be dealt with; ordering the Clerk to reopen the case; and vacating Paragraph 7 of the November 6, 2007 Order pertaining to Cashier's Check No. 1199 pursuant to Rule 60(b)(4) Fed. R. Civ. P.

The Bank obtained the declaratory relief in the November 6th Order without notice to the known party which it affected, and thereby affected the rights of NPS and also Inlander as later assignee of the Cashier's Check. It did this by burying Paragraph 7 in an Order dealing with unrelated subjects, and through a misrepresentation to Judge Squires that the Order was entirely agreed to. The Bank's failure to provide notice violated the Bankruptcy Rules requiring that an Adversary complaint be filed and summons served in order to obtain a declaratory judgment, see Fed. R. Bankr. P. 7001(2) and (9), as well as the basic notice requirement for contested matters under Fed. R. Bankr. P. 9014(a). Entry of the Order through deception of the judge thereby violated the Fifth Amendment due process rights of NPS. These issues can now be raised by Inlander as assignee of the Cashier's Check.

The Bank now argues in effect that for its grievous wrong there can be no remedy. In this it is most definitely wrong.

Other undisputed facts are set forth in the Discussion below.

### JURISDICTION AND VENUE

Subject matter jurisdiction lies under 28 U.S.C. § 1334. This matter is before the Court pursuant to 28 U.S.C. § 157 and referred here by Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. Venue lies under 28 U.S.C. § 1409.

The Bank obtained the original Order authorizing stop payment as part of its motion for use of cash collateral under 11 U.S.C. § 363(c)(2), which constituted a core proceeding under 28

-8-

U.S.C. § 157(b)(2)(M). No appeal of the November 6th Order, which would have divested the

bankruptcy court of jurisdiction, was ever taken. Switzer v. Marzall, 95 F. Supp. 721, 722

(D.D.C. 1951) (additional citations omitted). Therefore, Rule 60(b) Fed. R. Civ. P. [Rule 9024

Fed. R. Bankr. P.] compels the conclusion that this court retains jurisdiction to accord relief from

its own unappealed order for any of the reasons enumerated in that Rule. See Meyer v. Lenox (In

re Lenox), 902 F.2d 737, 739-40 (9th Cir. 1990); Matter of Met-L-Wood Corp., 861 F.2d 1012,

1018 (7th Cir. 1988) ("We conclude that the old inherent power to reconsider bankruptcy orders

has been merged into [Rule 60(b)]."). Since the order in issue is found to be void, jurisdiction

lies to vacate it.

## DISCUSSION

### I. *The Bank's Motion Treated Under Fed. R. Civ. P. 59 and 60*

Although the Bank's Motion does not state the basis on which it was brought as required

by Rule 9013 Fed. R. Bankr. P., it was filed within ten days of the challenged Orders and,

therefore, will be treated as having been brought under to Rule 59 Fed. R. Civ. P. [Rule 9023

Fed. R. Bankr. P.]. U.S. v. Deutsch, 981 F.2d 299, 301 (7th Cir. 1992) (quoting Charles v.

Daley, 799 F.2d 343, 347 (7th Cir.1986) ("[A]ll substantive motions served within 10 days of the

entry of judgment will be treated as based on Rule 59.")). For substantive reasons set forth

below, it is also treated under Rule 60 [Rule 9024 Fed. R. Bankr. P.].

### II. *The January 8, 2008 Order of Dismissal Will*
### *Be Vacated Pursuant to Bankruptcy Rule 9024*

In its Motion, the Bank argues that a bankruptcy case that has been dismissed cannot be

reopened under 11 U.S.C. § 350(b). On October 2, 2008, the undersigned set a briefing schedule

which included an instruction that the parties address *inter alia* the following issue along with

others discussed by them:

> Should Inlander's original Motion to Reopen pursuant to § 350(b) be treated as a
> Motion to Vacate the case dismissal Order under Rule 60(b) Fed. R. Civ. P. [Rule
> 9024 Fed. R. Bankr. P.]? See Matter of Garcia, 115 B.R. 169, 170 (Bankr. N.D.
> Ind. 1990).

According to 11 U.S.C. § 350(a), "After an estate is fully administered and the court has

discharged the trustee, the court shall close the case." Subsection (b) provides that "[a] case may

be reopened in the court in which such case was closed to administer assets, to accord relief to

the debtor, or for other cause." 11 U.S.C. § 350(b). The closing of a case under § 350(a) is

normally done after the bankruptcy estate has been fully administered. There is some support for

the Bank's argument that § 350(b) cannot be used to reopen this case that was never fully

administered or closed pursuant to § 350(a), but rather was dismissed. See e.g., Matter of

Garcia, 115 B.R. 169, 170 (Bankr. N.D. Ind. 1990) (citing In re Income Prop. Builders, Inc., 699

F.2d 963, 965 (9th Cir.1982)). However, more appropriate guidance is given by Matter of

Shondel, 950 F.2d 1301, 1304 (7th Cir. 1991) ("A decision to reopen a case for 'other cause' lies

within the discretion of the bankruptcy court and will be reversed only for an abuse of that

discretion. In exercising its discretion to reopen a case, *the bankruptcy court should exercise its*

*equitable powers with respect to substance and not technical considerations that will prevent*

*substantial justice.* The trend in reopening cases under section 350(b) has thus been to allow the

bankruptcy judge broad discretion to weigh the equitable factors in each case.") (emphasis

added) (internal citations omitted).

Moreover, in Garcia, "[t]he court . . . also construed debtor's motion to reopen as a motion to vacate the order of dismissal, pursuant to Bankruptcy Rule 9024." Garcia, 115 B.R. at 170. See also Singleton v. Countrywide Home Loans, Inc. (In re Singleton), 358 B.R. 253, 257-58 (D.S.C. 2006) ("Because the court finds that the Bankruptcy Court had no authority to 'reopen' the dismissed case, the court next addresses whether the Bankruptcy Court otherwise had authority to vacate the dismissal order and whether it abused its discretion in exercising that authority."). In their supplemental briefs, the parties before the Court in this case were therefore asked to address the question of whether Inlander's Motion to Reopen should be treated as a motion to vacate the dismissal order under Rule 60(b) Fed. R. Civ. P.

Rule 9024 Fed. R. Bankr. P. incorporates Rule 60 Fed. R. Civ. P. into bankruptcy proceedings. Rule 60(b) requires that relief be granted "on motion" and, therefore, at least one court has suggested in *dicta* that "a court cannot generally act *sua sponte* under Rule 60(b). . . ." Breedlove v. Pinco (In re J & L Structural), 313 B.R. 382, 390 n.9 (W.D. Pa. 2004) (citing 10 Collier on Bankruptcy ¶ 9024.03 (15th ed. rev.)). However, that clearly cannot apply to void orders. See 11 C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2862, at 325 (1973) ("Although the rule requires a motion for relief from the judgment, it has been held that the court on its own motion may set aside a void judgment provided notice has been given of its contemplated action and the party adversely affected has been given an opportunity to be heard."). Indeed, one of the powers granted to a bankruptcy judge under 11 U.S.C. § 105(a) is the power to initiate any motion for relief that a party in interest might initiate, always mindful of the need that § 105 powers must be exercised in aid of matters within the court's jurisdiction. 11 U.S.C. § 105(a) ("The court may issue any order, process, or judgment that is necessary or

appropriate to carry out the provisions of this title. *No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from,* sua sponte, *taking any action or making any determination necessary or appropriate . . . to prevent an abuse of process.*" (Emphasis added)). See also Lenox, 902 F.2d at 739-40 (citing 11 U.S.C. § 105(a)) ("Although FRCP 60(b) provides that a court may relieve a party from a final order upon motion, it does not prohibit a bankruptcy judge from reviewing, *sua sponte*, a previous order.").

Moreover, Inlander's original Motion to Reopen contained a prayer "for such other and further relief as this Court deems meet and just," (Am. Mot. to Reopen at 2), and was accompanied by a separate Amended Motion to Vacate the Portion of the Order of November 6, 2007[,] Allowing Aztec America Bank to Retroactively Stop Cashiers Check Number 1199. In addition, in its Supplement to Motion to Vacate and its Reply in Support of Supplement to and Motion to Vacate this Court's September 11, 2008 Orders, the Bank variously refers to Inlander's original Motions in the singular as "a Motion to Reopen/Vacate." (See Suppl. to Mot. to Vacate ¶ 9 at 5; Reply in Supp. of Suppl. to & Mot. to Vacate ¶ 6 at 4) (Docket Nos. 142, 147.) The Bank's own characterization of Inlander's Motion as a motion to vacate, and the undersigned's request that it supplement its Motion to address the Court's authority to treat the Motion to Reopen as a request to vacate the dismissal establishes that the Bank was aware that the Court was contemplating granting Inlander relief under Rule 60(b). Accordingly, the Bank cannot argue that it did not have notice of or would otherwise be improperly prejudiced if the court treats Inlander's Motion to Reopen as a motion to vacate the Order Dismissing Chapter 11 Case pursuant to Rule 60(b) [Rule 9024 Fed. R. Bankr. P.], and then reopens the case so that the Clerk

-12-

may docket the various filings and orders. This will be done in order that Inlander's Motion to
Vacate Paragraph 7 may be considered.

The Bank argues in effect that even if Paragraph 7 of the November 6th Order is void the
issue exists in a procedural no man's land. It suggests that the undersigned does not have any
authority to vacate that Order unless Inlander can establish a separate statutory basis for vacating
the dismissal of Debtor's bankruptcy case. (See Suppl. to Mot. to Vacate ¶ 14 at 7; Reply in
Supp. of Suppl. to & Mot. to Vacate ¶¶ 6, 8 at 4.)

A court has jurisdiction to vacate its own unappealed order if entered in error. This
authority may be implemented under Rule 60(b)(6) Fed. R. Civ. P. See Switzer, 95 F. Supp. at
722. According to Rule 60(b)(6), "the court may relieve a party or its legal representative from a
final judgment, order, or proceeding for the following reasons: . . . *any other reason that justifies
relief.*" (Emphasis added). "Motions under Rule 60(b) are addressed to the sound discretion of
the district court and are generally granted only upon a showing of exceptional circumstances."
Viacom, Inc. v. Gollust, 909 F.2d 724, 731 (2d Cir. 1990) (citing Nemaizer v. Baker, 793 F.2d
58, 61 (2d Cir. 1986)). However, "[a]lthough Rule 60(b)(6) does not particularize the factors
that justify relief . . . it provides courts with authority 'adequate to enable them to vacate
judgments whenever such action is appropriate to accomplish justice. . . .'" Geberegeorgis v.
Gammarino (In re Geberegeorgis), 310 B.R. 61, 69 (B.A.P. 6th Cir. 2004) (quoting Klapprott v.
U.S., 335 U.S. 601, 615 (1949)).

The fact that Inlander did not challenge the original grounds for case dismissal is
irrelevant. See id. (vacating dismissal under Rule 60(b)(6) although "Debtor [did] not contest[]
the original grounds for dismissal or that the bankruptcy court was wrong in dismissing the

-13-

case."). See also Metmor Fin., Inc. v. Bailey (In re Bailey), 111 B.R. 151, 153 (W.D. Tenn.

1998) ("[W]hether cause existed for the initial order is a distinct issue from whether to vacate the

order under Rule 60(b)(6)."). In Geberegeorgis, the debtor's case was dismissed for failure to

make plan payments after he was hospitalized for congestive heart failure, and could not operate

his convenience store business that was the source of income to fund those plan payments. 310

B.R. at 64. The court found that "[w]here, as here, the inability to act resulted from sickness and

hospitalization beyond a party's control, and where substantial justice will in turn be served by

vacating a dismissal order, other courts have found the type of extraordinary circumstances

within the ambit of Rule 60(b)(6)," and therefore, affirmed the bankruptcy court's decision

vacating its prior order of dismissal. Id. at 70 (citations omitted). In Geberegeorgis, debtor's

health problems could in no way be attributed to any other party to the bankruptcy and yet

provided sufficient basis for vacating the dismissal pursuant to Rule 60(b)(6). In this case, the

Bank's misrepresentation to the court that the Order was consented to by all interested parties,

and its egregious failure to follow the statutory and procedural requirements for recovering

property and to provide basic due process notice of the relief sought against NPS, provides the

exceptional circumstances necessary to justify exercising discretion to vacate the dismissal and

then vacate the unlawful part of the November 6th Order.

     For the foregoing reasons, the January 8, 2008 Order dismissing Debtor's bankruptcy

case will be vacated pursuant to Rule 60(b)(6) [Rule 9024 Fed. R. Bankr. P.].

     As earlier noted, most precedent holds that a case that has been dismissed cannot be

reopened pursuant to § 350(b). See e.g., Singleton, 358 B.R. at 257; J & L Structural, 313 B.R.

at 384 n.4; In re Kent Funding Corp., 290 B.R. 471, 476 (Bankr. E.D.N.Y. 2003); Lewis &

Coulter, 159 B.R. at 191; Garcia, 115 B.R. at 170. However, in drawing a distinction between

dismissal and closure, several of those opinions point to the fact that closing a case serves a

purely administrative function. Kent Funding, 290 B.R. at 476 ("However, dismissal of a

bankruptcy case does not terminate all proceedings in the Bankruptcy Court. For example, a

Chapter 13 case will remain open after dismissal to provide for approval of the Chapter 13

trustee's final report and discharge of the Chapter 13 trustee.") (additional citations omitted);

Lewis & Coulter, 159 B.R. at 191 n.4 ("Entry on the docket that the case had been closed refers

only to an administrative closing of the file, not to a statutory closing pursuant to 11 U.S.C.

§ 350. The entry reflects only an internal operating procedure of the clerk's office.") (additional

citations omitted). See also In re Hill, 305 B.R. 100, 104 (Bankr. M.D. Fla. 2003) ("It should

first be noted that a case may be 'dismissed' without being 'closed.'"). While the Bank presents

an interesting technical issue concerning the distinction between closure and dismissal as earlier

noted, a Seventh Circuit panel has indicated that, in evaluating "other cause" under § 350(b), it

will not elevate form over substance that would prevent substantial justice. Shondel, 950 F.2d at

1304 (quoting In re Stark, 717 F.2d 322, 323 (7th Cir.1983)). Therefore, in addition to

reinstating Debtor's bankruptcy by vacating the dismissal order, the Clerk will be ordered to

reopen the bankruptcy case for the administrative purpose of docketing these proceedings.

### III. *Inlander is Entitled to Relief*

a. The Bank misrepresented that complete notice of the Motion had been provided, and that all parties affected by the relief sought therein had stipulated to entry of the entire November 6th Order. Therefore, Paragraph 7 of the Order should be vacated under Rule 60(b)(3).

According to Rule 60(b) Fed. R. Civ. P. [Rule 9024 Fed. R. Bankr. P.]:

On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: . . .

(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

[and]

(4) the judgment is void. . . .

The Bank concentrates its argument on subparagraph (3), arguing that Inlander "must prove by clear and convincing evidence that the order was procured by fraud, misrepresentation or other misconduct." (Suppl. to Mot. to Vacate ¶ 13 at 6; Reply in Supp. of Suppl. to & Mot. to Vacate ¶ 9 at 5.) In order to obtain relief under Rule 60(b)(3), the movant must show that: (1) it maintained a meritorious claim at trial; and (2) because of the fraud, misrepresentation or misconduct of the adverse party; (3) it was prevented from fully and fairly presenting its case at trial. Lonsdorf v. Seefeldt, 47 F.3d 893, 897 (7th Cir. 1995) (citing Green v. Foley, 856 F.2d 660, 665 (4th Cir.1988)).

It should be noted here that the Bank does not suggest that it took any steps to cause the attention of Judge Squires, before whom this case was originally assigned and who signed the November 6th Order, to be focused on Paragraph 7 which was buried in the middle of a purportedly agreed order, or to inform him that the party affected by that Order was not noticed

and had not consented. The bankruptcy judges in this district are each assigned many thousands of cases each year. They are entitled to rely on the parties to alert them to any unusual requests for relief, especially where the parties want the judge to dispose summarily of a matter by way of declaratory relief in a purported agreed order. In this case, the Bank misrepresented that all parties to be affected by the purportedly agreed Order had received notice and stipulated to entry thereof. Judge Squires is an experienced jurist, and he never would have entered the November 6th Order had he been fully informed of the lack of notice thereof or consent thereto. He was indeed misled.

"[Rule] 60(b)(3) [Fed. R. Civ. P.] applies to both intentional and unintentional misrepresentations." Id. (citing Plattner v. Strick Corp., 102 F.R.D. 612, 614 (N.D. Ill.1984)). Therefore, it is irrelevant whether the Bank intended to mislead Judge Squires. National Packing Services was prevented from collecting on the Cashier's Check or fairly presenting any objection or defense to the Bank's request to stop payment on the Check, because the Bank misrepresented to the court that all parties with an interest had been noticed and stipulated to entry of the entire Order. The Bank's admission here that no notice was provided to NPS is the only evidence necessary to prove this point.

For the foregoing reasons, it is found and held that the Bank obtained the November 6, 2007 Order authorizing it to stop payment on the Cashier's Check by misrepresenting that complete notice of its Motion had been provided and the relief sought therein had been fully agreed to. Therefore, Paragraph 7 of the Order authorizing stop payment on Cashier's Check No. 1189 in the amount of $15,496.25 will be vacated pursuant to Rule 60(b)(3) Fed. R. Civ. P. [Rule 9024 Fed. R. Bankr. P.].

b.    Paragraph 7 of the November 6, 2007 Order stopping payment on the Cashier's Check
      was void, because the holder and owner of the Check was deprived of due process notice.
      Therefore, Paragraph 7 of the Order should be vacated under Rule 60(b)(4).

According to Rule 60(b)(4), an order may be vacated if it is void. "The failure or

inadequacy of notice raises due process issues and may render a judgment void." J & L

Structural, 313 B.R. at 388 (citing United States v. One Toshiba Color Television, 213 F.3d 147,

156 (3d Cir. 2000); Gold Kist, Inc. v. Laurinburg Oil Co., Inc., 756 F.2d 14, 19 (3d Cir. 1985)).

"Unlike motions pursuant to other subsections of 60(b), the Court has no discretion regarding

motions to vacate void judgments under Rule 60(b)(4)." I.L.G.W.U. Nat'l Ret. Fund v.

Meredith Grey, Inc., 986 F. Supp. 816, 819 (S.D.N.Y. 1997) (quoting Ka Hwa Shipping Co.,

S.A. v. China Steel Corp., 816 F. Supp. 910, 913 (S.D.N.Y.1993)). Under those holdings, a void

order must be vacated pursuant to Rule 60(b)(4) [Rule 9024 Fed. R. Bankr. P.].

Rule 60(c)(1) requires that "[a] motion under Rule 60(b) must be made within a

reasonable time — and for reasons (1), (2), and (3) no more than a year after the entry of the

judgment or order or the date of the proceeding." The Bank argues that it was unreasonable for

Inlander to wait more than six months after the bankruptcy was dismissed to bring its Motions to

Reopen and Vacate. The Bank cites In re Waugh for the proposition that "'reasonable time'

depends on the facts of a given case, including the length and circumstances of the delay,

intervening rights, the possibility of prejudice to the opposing party and the desirability that

judgments be final." 367 B.R. 361, 367 (Bankr. E.D.N.Y. 2007) (quoting In re Teligent, Inc.,

306 B.R. 752, 758 (Bankr. S.D.N.Y. 2004)). However, the Bank makes only conclusory

allegations concerning possible prejudice to it based on Inlander's delay in bringing its Motions.

Moreover, "[c]hallenging a void judgment is generally not subject to any period of limitations

-18-

and laches cannot be raised as a bar to the challenge." J & L Structural, 313 B.R. at 388 (citing

11 C. Wright, A. Miller & M. Kane, supra, § 2862, at 324; One Toshiba Color Television, 213

F.3d at 157).

c.   The Bank failed to file possible Adversary proceeding or Motion triggering contested
     matter that would have given notice.

In this case, the November 6th Order was entered without notice to NPS, the payee on the

Cashier's Check, thereby affecting subsequent rights of Inlander which was assigned interest in

that Check. That portion of the November 6th Order that Inlander now seeks to have vacated

gave declaratory relief adjudicating the Bank's legal right to stop payment on the Check.

According to Rule 7001(9) Fed. R. Bankr. P., "An adversary proceeding is governed by the rules

of this Part VII. The following are adversary proceedings: . . . *a proceeding to obtain a*

*declaratory judgment relating to any of the foregoing [proceedings].*" (Emphasis added).

See also TPI Int'l Airways, Inc. v. United States (In re TPI Int'l Airways, Inc.), No. 91-20162,

1998 WL 34064504, *4 (Bankr. S.D. Ga. Jul 16, 1998); and Nat'l Gypsum Co. v. Prostok, No.

Civ. A. 3:98CV0869P, 2000 WL 1499345, *13 (N.D. Tex. Oct. 5, 2000) ("Rule 7001(9) requires

that declaratory judgment actions be initiated by adversary proceedings as to any of eight specific

declarations."). One of the proceedings covered by Rule 7001(9) is "a proceeding to determine .

. . other interest in property." Fed. R. Bankr. P. 7001(2). It is required, therefore, that any prayer

for declaratory relief that affects rights in the Check should have been made by initiating an

Adversary proceeding.

An Adversary proceeding requires a complaint and the service of summons, see Fed. R.

Bankr. P. 7003-7004, by which a court obtains *in personam* jurisdiction over the party named in

-19-

the complaint; its due process rights to notice and opportunity to be heard are thereby guaranteed.
Swaim v. Moltan Co., 73 F.3d 711, 719 (7th Cir. 1996) ("Valid service of process is a
prerequisite to a district court's assertion of personal jurisdiction.") (additional citations omitted).
Here, the Bank obtained Paragraph 7 of the Order adjudging rights as to the Cashier's Check
without complying with Rule 7001(9) Fed. R. Bankr. P. In other words, the court did not have *in
personam* jurisdiction over NPS when it entered the November 6th Order and, therefore,
Paragraph 7 of the Order is void.

The opinion in Nat'l Gypsum Co. indicated that an Adversary proceeding is not always
required "'where the rights of the affected parties have been adequately protected and the parties
have had an opportunity to be heard. . . .'" Id. (quoting In re Friedman, 184 B.R. 883, 887
(Bankr. N.D.N.Y. 1994), *aff'd,* 184 B.R. 890 (N.D.N.Y. 1994)). Nevertheless, even if the Bank's
prayer for declaratory relief did not need to be brought in the form of an Adversary proceeding, it
was still governed by the procedures required for "contested matters". Id. According to Rule
9014(a) Fed. R. Bankr. P., "In a contested matter not otherwise governed by these rules, relief
shall be requested by motion, *and reasonable notice and opportunity for hearing shall be
afforded the party against whom relief is sought.*" (Emphasis added). Moreover, the
Constitution's Fifth Amendment bars court orders that deprive property rights without due
process. Goros v. County of Cook, 489 F.3d 847, 859 (7th Cir. 2007).

The Bank characterizes its request for declaratory relief in Paragraph 7 as a good faith
effort "to protect AztecAmerica's cash collateral the Debtor had used without any authorization
from either AztecAmerica or the Court," and that "AztecAmerica's actions were not directed at

-20-

NPS but rather directed at the Debtor in an attempt to protect AztecAmerica's cash collateral."
(Suppl. to Mot. to Vacate ¶¶ 15-16 at 7-8.) This argument has no merit.

According to section 3-412 of the Uniform Commercial Code, "The issuer of a note or
cashier's check or other draft drawn on the drawer is obliged to pay the instrument (i) according
to its terms at the time it was issued or, if not issued, at the time it first came into possession of a
holder." 810 ILCS 5/3-412. A "'[h]older' with respect to a negotiable instrument means the
person in possession if the instrument is payable to bearer or, in the case of an instrument payable
to an identified person, if the identified person is in possession." 810 ILCS 5/1-201(20). The
purchase of the Cashier's Check created a debtor-creditor relationship between Debtor and the
Bank. See Gillespie v. Riley Management Corp., 301 N.E.2d 506, 508 (Ill. App. Ct. 1973). That
relationship contemplated delivery of the Check to NPS, the named payee in this case. Id.
"'Delivery' with respect to instruments, documents of title, chattel paper or certificated securities
means voluntary transfer of possession." 810 ILCS 5/1-201(14).

The Bank concedes that NPS presented the Cashier's Check for payment. (Resp. of
AztecAmerica Bank in Opp'n to Inlander's Mtns. to Reopen and Vacate ¶ 12 at 5.) Since NPS
presented the Cashier's Check for payment, the check had obviously been delivered to it and
NPS thereby obtained rights as holder of the Check. In addition, the Bank itself offered
Paragraph 7 of the November 6th Order in state court as a legal basis to cut off Inlander's rights
as a transferee of the Cashier's Check from NPS. Therefore, the Bank's characterization of the
November 6th Order as merely a good faith effort to dispose of a two-party dispute between itself
and Debtor is frivolous.

The Bank argues further that lack of notice was due to failure of Debtor to schedule NPS as a creditor and that "[i]t certainly would not be the responsibility of . . . AztecAmerica . . . to track down every purported creditor of the Debtor for purposes of notifying them of every pleading filed in the Bankruptcy Case." (Suppl. to Mtn. to Vacate ¶ 14 at 7.) The Bank does not provide any authority for that disregard of its obligation to obtain relief only through procedures providing required notice and Constitutional due process. Rather, it is clear that "[a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950). The Bank's Motion upon which the November 6th Order was predicated did not require the Bank to "track down every purported creditor of the Debtor" or notify them of "every pleading filed." Rule 7004(a) Fed. R. Bankr. P. requires the service of summons and a copy of the complaint in an Adversary proceeding. Rule 9014(a) Fed. R. Bankr. P. requires that the party seeking relief provide notice to "the party against whom relief is sought." In either case, the required notice in this case was limited to any parties who had or claimed an interest in the Cashier's Check. Moreover, the Fifth Amendment of the Constitution certainly required some kind of notice to such parties and an opportunity to be heard. Since the Bank had recently dishonored the Check, it knew who that Check was payable to and should have served notice upon NPS.

Finally, the Bank argues that NPS likely had notice of the October 30th hearing because the Stipulation and First Interim Order required Debtor to "use its best efforts to cause the holder of cashier's check number 1199 in the amount of $15,496.25 issued by Lender to be returned to

-22-

Lender without being presented for payment." (See Suppl. to Mtn. to Vacate ¶ 16 at 8.)
However, NPS was not served with the Bank's Motion for Authorization for the Use of Cash
Collateral and Granting Post-Petition Replacement Liens, and the Bank did not offer to show that
Debtor had complied with the requirement that it attempt to recover the Cashier's Check. But
even if NPS had received notice of the earlier Motion, which was not shown, it would not follow
that it had notice of a later motion. See In re Eliscu, 85 B.R. 480, 482 (Bankr. N.D. Ill. 1988) (a
party does not have an "open ended duty to check court records.").

     The Bank representatives may feel genuinely aggrieved by Debtor's perceived
unauthorized use of cash collateral to purchase the Cashier's Check. However, once Debtor
delivered the Check to NPS, it became a holder as the named payee and Debtor no longer had a
right to unilaterally demand its return, nor could the Bank stop payment on the Check without
litigation. See 810 ILCS 5/3-411; Meng v. Maywood Proviso State Bank, 702 N.E.2d 258, 265
(Ill. App. Ct. 1998) ("'Section 3-411 and related provisions considerably improve the
acceptability of bank obligations like cashier's checks as cash equivalents by providing
disincentives to wrongful dishonor, such as possible recovery of consequential damages.'"
(Internal citations omitted)). See also MidAmerica Bank, FSB v. Charter One Bank, FSB, 889
N.E.2d 1187, 1191 (Ill. App. Ct. 2008) appeal allowed by 229 Ill.2d 627 (Sept. 24, 2008) ("[A]
bank may dishonor a cashier's check under certain circumstances. The question becomes
whether any of those circumstances exist. . . ."). Before this case was dismissed, one possible
course of action might have been for Debtor to pursue a preference action under 11 U.S.C.
§ 547(b), or possibly an action to recover a postpetition transfer under 11 U.S.C. § 549(a), each
of which must be brought as an Adversary proceeding. See Rule 7001(1) Fed. R. Bankr. P. Such

procedure would have required the service of summons and a complaint on NPS, the party

against which the Bank was seeking relief, thereby complying with requirements of due process.

None of that was done.

### IV. *Inlander has standing as assignee of the payee, NPS.*

The Bank argues that Inlander had no standing to bring the Motions to Reopen and

Vacate, because it took assignment of the Cashier's Check after it had been dishonored and the

Bank obtained authority through declaratory judgment in Paragraph 7 of the November 6th Order

to stop payment. Therefore, it argues, Inlander is not a holder in due course. (See Hr'g Tr. 26,

Sept. 9, 2008.) No evidence has been taken here as to the details of the underlying transaction,

and this Opinion does not decide the merits of whether Inlander was or is a holder in due course

of the Cashier's Check.

Inlander argues that it attempted to take advantage of Debtor's status as a minority

contractor to operate its business, and thereby provided the funds to purchase the Cashier's

Check, less a small percentage as a commission to Debtor, in order to pay a supplier. (See

Motions to Reopen/Vacate ¶¶ 2 at 1; Hr'g Tr. 9, Sept. 9, 2008.) It therefore contends that it was

the actual purchaser of the Cashier's Check and, subsequently, a creditor of Debtor in its own

right. (See e.g., Hr'g Tr. 6, Sept. 9, 2008.) The Bank responds that Inlander cannot establish a

connection between the $15,803.48 check it provided to Debtor and the $15,496.25 Cashier's

Check. (Suppl. to Mtn. to Vacate ¶ 4 at 3). However, the Bank had previously argued that the

presentment of the $15,803.48 check to purchase the Cashier's Check on September 6, 2007,

provided the basis for its Motion for Relief from Automatic Stay. (See Mtn. for Relief from

Automatic Stay ¶ 8 at 3; Exs. D-E thereto.) Having argued that the presentment of the

-24-

$15,803.48 check and the purchase of the Cashier's Check were all part of one transaction by

Debtor to use cash collateral without authorization, and having attached exhibits in support

thereof, it is contradictory for the Bank to argue now that Inlander has not shown a nexus

between the $15,803.48 and the funds used to purchase the Check. But, once again, no evidence

has been taken on these issues.

A debtor-creditor relationship exists between a purchaser-remitter of a cashier's check

and the issuing bank, and the purchaser has standing to assert a wrongful dishonor of the

cashier's check whether it is the payee or owner of the check as assignee. Munson v. Am. Nat.

Bank & Trust Co. of Chicago, 484 F.2d 620, 622 n.2 (7th Cir. 1973) (citing Schulze v. Rayunec,

350 F.2d 666, 668 (7th Cir. 1965), cert. denied, 382 U.S. 919 (1965)). Inlander appears to be the

owner of the Cashier's Check by virtue of the assignment from NPS. See 810 ILCS 5/1-201(20).

However, Inlander has not as yet provided any evidence or authority for its assertion that it

should be treated as the purchaser of the Check because it claims to have provided funds used by

Debtor to purchase the Check.

Even if Inlander was not the purchaser-remitter of the Cashier's Check it is possible that

it obtained the status of an administrative claimant by providing funds for Debtor to purchase the

Check. According to 11 U.S.C. § 503(b)(1)(A), "After notice and a hearing, there shall be

allowed administrative expenses, other than claims allowed under section 502(f) of this title,

including ... the actual, necessary costs and expenses of preserving the estate. . . ."

The Bank argues that Inlander cannot establish that the $15,803.48 aided in the

preservation of the Bankruptcy Estate because it was used to purchase the Cashier's Check and,

therefore, removed from the Estate. (Suppl. to Mtn. to Vacate ¶ 5 at 3-4.) The Bank's

-25-

conclusory argument misconstrues the Bankruptcy Estate in Chapter 11 as a static entity rather

than recognizing that Estate as usually funding a Chapter 11 going-concern reorganization. See

In re South Beach Securities, Inc., 341 B.R. 853, 856 (N.D. Ill. 2006) ("the underlying purposes

of Chapter 11 [are] preserving going concerns and maximizing payments to creditors.").

In order to be treated as an administrative claim, the debt must "(a) arise[] out of a

transaction with the debtor in possession; and (b) [be] beneficial to the operation of the debtor in

possession's business." In re Kmart Corp., 293 B.R. 905, 909 (Bankr. N.D. Ill. 2003). As a

threshold matter, "[o]nly those debts that arise after the filing of the bankruptcy petition may be

accorded administrative expense status." Marriott Family Rests., Inc. v. Lunan Family Rests. (In

re Lunan Family Rests.), 194 B.R. 429, 449 (Bankr. N.D. Ill. 1996) (citing In re United Trucking

Service Inc., 851 F.2d 159, 161 (6th Cir.1988)). The $15,803.48 check from Inlander is dated

August 30, 2007, which might suggest that the debt arose from a transaction with Debtor after

the bankruptcy was filed on August 21, 2007. However, this is only speculation on the present

record, and illustrates yet another issue that is not decided here.

Finally, it is unclear whether Inlander had notice, when it took assignment of the

Cashier's Check, that it had been previously dishonored by the Bank when earlier presented for

payment by NPS, or that the November 6th Order had authorized the Bank to stop payment on

the Check. If Inlander had notice of either the dishonor or possible defenses of the Bank to the

Cashier's Check then it might not have become a holder in due course when it took assignment

of the Check from NPS. See 810 ILCS 5/3-302. In order to determine whether Inlander is a

holder in due course under the Uniform Commercial Code, it would be necessary to determine

whether it was acting as the purchaser-remitter of the Cashier's Check or as an assignee of the

payee. See Gillespie, 319 N.E.2d at 756. In other words, if Inlander was acting as the purchaser-remitter of the Cashier's Check, it might have a separate cause of action for wrongful dishonor separate and apart from its status as a holder based on the assignment. See id. However, this is another issue that cannot be decided on the present record.

In short, the standing and rights of Inlander to enforce the Cashier's Check under non-bankruptcy law remain undecided. However, it is unnecessary to reach the ultimate issues as to Inlander's rights to enforce the Check under the Uniform Commercial Code in order to determine that it does have standing in bankruptcy court to bring its Motions to Reopen and Vacate the November 6th Order for relief improperly obtained against its assignor. An assignee stands in the shoes of the assignor. See Efaich Co. v. Wick (In re Theodore A. Kochs Co.), 120 F.2d 603 (7th Cir. 1941) ("[T]he mere assignment of the mortgage after the bankruptcy sale, does not operate to give the assignee any less standing in court than his assignor would have had.").

It is clear that NPS was entitled to notice before the November 6th Order was entered, and that the Order was void as a result of the Bank's failure to provide such notice. Thus, Inlander, as an assignee of the Cashier's Check, stands in the shoes of NPS, and can assert grounds as a basis for vacating the November 6th Order.

### V. *Limited Issues to be Decided in Bankruptcy*

If the Bank is correct in contending that its cash collateral was improperly used, it had remedies to assert before the case was dismissed. Available remedies for the unauthorized use of cash collateral then included: (1) seeking a preliminary or permanent injunction restraining the use, transfer or disposition of cash collateral; (2) bringing a motion for relief from the automatic stay for lack of adequate protection pursuant to 11 U.S.C. § 362(d)(1); (3) seeking an order under

-27-

11 U.S.C. § 363(e) conditioning the use of cash collateral on the provision of adequate protection; or (4) seeking the appointment of a trustee pursuant to 11 U.S.C. § 1104(a). 5A Fed. Proc., L. Ed. § 9:1028 (Sept. 2008) (internal citations omitted). In this case, adequate protection under § 363(e) was provided to some degree by the granting of a post-petition lien against all property of Debtor. (Stipulation and First Interim Order ¶ K at 6.) The Bank provides no authority to support its argument that an order authorizing stop payment is an additional remedy for the unauthorized use of cash collateral.

After case dismissal, the foregoing remedies in bankruptcy were not available. The case will now be reinstated only to grant Inlander relief. However, there has been no indication that Debtor intends to or can correct the problems that originally led to its case being dismissed, or that it now can proceed with an effective reorganization. In fact, both Debtor and the United States Trustee objected to reopening the case, because Debtor does not even intend to pay the Trustee's quarterly fees. (See Hr'g Tr. 5-6, Sept. 9, 2008; Hr'g Tr. 2-3, Sept. 11, 2008.) Therefore, after the void order is vacated, the case will likely be dismissed again under the United States Trustee's motion.

Once Inlander obtains relief here, it is doubtful that the Bank's defenses to an action to enforce the Check can be litigated in this court. According to 28 U.S.C. § 1334(b), "[T]he district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." Pursuant to 28 U.S.C. § 157(a), the district courts may refer cases arising under Title 11 to the bankruptcy court for their district. A bankruptcy court has no jurisdiction over a controversy between non-debtor parties under the court's "related to" jurisdiction unless the outcome of that dispute would affect the

-28-

administration of the Estate. <u>Churchill Cabinet Co. v. Cont'l Illinois Nat'l Bank and Trust Co. of
Chicago (In re Destron, Inc.)</u>, 38 B.R. 310, 312-13 (Bankr. N.D. Ill. 1984). <u>See also In re Burton
Coal Co.</u>, 126 F.2d 447 (7th Cir. 1942). Should Debtor take no steps towards reorganizing, its
bankruptcy petition will again be dismissed. There would then be no Bankruptcy Estate for
whose benefit the Cashier's Check could be recovered. All that would remain, should the case
be dismissed again on the U.S. Trustee's Motion, is a commercial dispute between two non-
debtors under non-bankruptcy law over the enforceability of the Cashier's Check. Therefore, the
bankruptcy court will lack either core or related-to subject matter jurisdiction over any claims or
defenses associated with the enforcement of the Check under the Uniform Commercial Code.

CONCLUSION

For reasons stated, AztecAmerica Bank's Motion to Vacate the September 11, 2008
Orders will be allowed. However, new Orders will now be entered vacating dismissal of
Debtor's bankruptcy case pursuant to Rule 60(b)(6) Fed. R. Civ. P.; reopening the case for
administrative purposes; and vacating Paragraph 7 of the November 6, 2007 Order pursuant to
Rules 60(b)(3) and 60(b)(4) [Rule 9024 Fed. R. Bankr. P.].

The new Orders will thereby vacate the declaratory relief obtained by the Bank for
reasons earlier stated. This does not adjudicate the merits of the remaining controversy between
the parties. Since it seems likely that the case should again be dismissed, it appears that this

Court will lack jurisdiction to adjudicate that dispute under non-bankruptcy law.  However,

status of the case will be set so that counsel for the parties may speak on whether the case should

or should not be dismissed again under motion of the United States Trustee.

ENTER:

Jack B. Schmetterer
United States Bankruptcy Judge

Entered this 9th day of January 2009.

-30-